In the Matter of the Motion of ARNOLDO FERAYORNI for an Order of Mandamus against WILLIAM WALTER and Others, Constituting the Board of Inspectors of Election for the Twenty-eighth Election District of the First Assembly District, Borough of Queens, City of New York, and JOHN R. VOORHIS and Others, Constituting the Board of Elections of the City of New York, Defendants.

Supreme Court, Queens County, October, 1923.

Elections — qualification of new voters — literacy test — when residents of state not considered new voters and not subject to test — naturalized citizen not entitled to register without proof of ability to pass test where he was naturalized December 2, 1921, but never voted, since such person was not entitled to vote under ninety-day provision of Election Law — refusal of inspectors of election to enroll applicant proper where he fails to present certificate of having passed literacy test.

A person who becomes entitled to vote in this state after January 1, 1922, must, in addition to his or her other qualifications as a voter, be able, except for physical disability, to read and write English and if a naturalized citizen he or she must have been naturalized at least ninety days prior to the election.

Residents of this state possessing all the qualifications of voters therein prior to January 1, 1922, when the amendment to section 1 of article 2 of the Constitution of the state providing for a literacy test became effective, but who have never exercised their right to vote, are not to be considered and treated as new voters upon their application for registration and they are not subject to the literacy test provided for by the statute (Election Law, § 150, as amd. by chap. 809, Laws of 1923) which was passed to enforce said constitutional amendment.

A person who has been a resident of this state ever since he became a naturalized citizen on December 2, 1921, but has never voted, is not entitled to be enrolled as a voter without presenting to the board of inspectors of election in his election district proof that he had passed the literacy test as required by section 150 of the Election Law as amended in 1923.

Under the ninety-day provision of the statute such a person would have been entitled to vote on March 2, 1922, but whatever qualification he had on January 1, 1922, he was not then entitled to vote, and while the legislature could neither curtail nor diminish any legal rights he had as a citizen, those rights did not mature until March 2, 1922, at which time the said constitutional amendment as to the requirement of the literacy test became obligatory upon him.

Where, therefore, he sought to be registered on October 11 and 12, 1923, as a qualified voter and exhibited on both days to the board of inspectors of election for the proper election district his certificate of naturalization but presented no certificate of literacy at either time, the refusal of said board to enroll and register him as a qualified voter was not improper, and his application for an order of mandamus requiring them so to do will be denied.

MOTION for peremptory order of mandamus.

*Joseph Lonardo*, for petitioner.

*George P. Nicholson* (*Russell L. Tarbox*, of counsel), for defendants.

DIKE, J. This is an application for a peremptory order of mandamus requiring the inspectors of election to reconvene and register the applicant and his wife in the twenty-eighth election district of the first assembly district, borough of Queens, and requiring the inspectors of election in each of the other election districts of the city to reconvene and register all other persons claiming to be similarly situated. It appears by the petition of the relator that an enrollment was refused to the relator and registration denied upon the ground that he failed to present proof that he had passed a literacy test as required by section 150 of the Election Law. The facts are not disputed. The relator became a citizen by naturalization on December 2, 1921 He has never voted, and the defendants claim that their action was proper in that the relator is a new voter within the meaning of section 150. The relator became a duly naturalized citizen on December 2, 1921, has resided twelve years in the state of New York and made proper application at No. 385 Broadway, Astoria, Long Island City, Queens county, in the twenty-eighth election district of the first assembly district of Queens county. He sought to be registered on October 11 and October 12, 1923, as a qualified voter, having exhibited at those times to the inspectors and officials his certificate of naturalization. No certificate of literacy was presented to the board either time. Upon the argument the deputy attorney-general of the state appeared, also a representative of the New York county Democratic committee, and urged with the relator that the motion should be granted, the corporation counsel of the city of New York arguing in opposition. At the outset, I wish clearly to be understood as deciding this particular case and those that may clearly come within the purview of my decision: That the plea requiring all boards of inspectors and boards of registry in and throughout all of the boroughs of the city of New York to reconvene and meet for the purpose of permitting all persons to register as duly qualified voters whose right to so register has been refused similarly to petitioner is in nowise and in no manner by this decision ordered or directed. That would be tantamount to ordering an additional day of enrollment and put in motion all of the elaborate and enormously expensive machinery for such purpose in this city; and on the other hand every provision should now be made and a method of correcting the books of registration adopted which will involve the least confusion in the election machinery and will

at the same time in no case deprive any citizen justly entitled to vote at the coming election from having his name duly enrolled by the proper board and every proper legal means invoked which will completely and generously safeguard to any citizen duly entitled his right to take part in the selection of his public servants. Much confusion' seems to have arisen between the term " new voter " and " first voter."

Section 1 of article 2 of the State Constitution reads in part: " Every citizen of the age of twenty-one years who shall have been a citizen for ninety days, and an inhabitant of this state one year next preceding an election, and for the last four months a resident of the county, and for the last thirty days a resident of the election district in which he or she may offer his or her vote, shall be entitled to vote at such election in the election district of which he or she shall at the time be a resident. * * * Notwithstanding the foregoing provisions, after January 1, 1922, no person shall become entitled to vote by attaining majority, by naturalization or, otherwise unless such person is also able, except for physical disability, to read and write English; and suitable laws shall be passed by the legislature to enforce this provision."

Section 150 of the Election Law reads as follows: " Sec. 150. Qualification of voters. A person is a qualified voter in any election district for the purpose of having his or her name placed on the register if he or she is or will be on the day of the election qualified to vote at the election for which such registration is made. A qualified voter is a citizen who is or will be on the day of election twenty-one years of age, and who has been an inhabitant of the state for one year next preceding the election, and for the last four months a resident of the county, and for the last thirty days a resident of the election district in which he or she offers his or her vote. If a naturalized citizen, such person must, in addition to the foregoing provision, have been naturalized at least ninety days prior to the day of election, or, if a citizen by marriage, must have been an inhabitant of the United States for five years and married ninety days prior to such day. In the case of a person who became entitled to vote in this state by attaining majority, by naturalization or otherwise after January first, nineteen hundred and twenty-two, such person must, in addition to the foregoing provisions, be able, except for physical disability, to read and write English. A ' new voter,' within the meaning of this and the next article, is a person who, if he is entitled to vote in this state, shall have become so entitled on or after January first, nineteen hundred and twenty-two, and who has not already voted at a general election in the state of New York after making proof of ability to read and write

English in the manner provided in section one hundred and sixty-six." As amended by chapter 809, Laws of 1923.

Construing these sections, it would clearly appear that a native-born citizen who became twenty-one years of age in December, 1921, may vote, if otherwise qualified, without taking a literacy test, but if the same native-born citizen became of age in January, 1922, he must take the test provided by law before he could vote. This same rule would apply to those citizens who moved into the state, and their status having been acquired before January 1, 1922, such persons would not be required to take the literacy test. After that date such persons could not vote without taking the literacy test. A person may have been entitled to vote in this state for years and yet never have availed himself of the privilege. To hold that such a person should be obliged to take the literacy test unless he could show that he had voted prior to January 1, 1922, would be a wrong construction. This has not been directly judicially passed upon, but an opinion of the corporation counsel of the city of New York, issued in September, 1922, would seem to share this view. It is as follows: " I am of the opinion that residents of this state possessing all the qualifications required of voters prior to January 1, 1922, but who have never heretofore exercised such right in this state, are not to be considered and treated as new voters upon their application for registration and are not to be subject to the literacy test provision thereof." I cannot hold that the relator in the instant case brings himself within the provisions permitting him to be enrolled without the literacy test. It seems to me that the relator comes within the exception which is contained in the statute above quoted, which, after stating the qualifications for the voter, is as follows: " If a naturalized citizen, such person must, in addition to the foregoing provision, have been naturalized at least ninety days prior to the day of election." Applying this provision to the situation as disclosed in the instant case, I would hold that the relator, had he received his citizenship papers on October 1, 1921, should have had his name properly enrolled and registered by the inspectors and officials of election in his district, but the relator became a citizen on December 2, 1921. Under the ninety-day provision he would have been entitled to vote on March 2, 1922. The constitutional amendment took effect on January 1, 1922, and contained in that amendment is the provision as to the literacy test. Whatever qualification he had on January 1, 1922, he certainly was not then entitled to vote, nor do I see that his constitutional rights have been invaded. It is true that the legislature could not curtail or diminish any legal rights possessed by the relator as a citizen, but those rights did not mature until

March 2, 1922, and the constitutional amendment as to the requirements of the literacy test on March 2, 1922, became obligatory upon him. Relator's wife, who never appeared and offered to be enrolled, of course, must be denied the right to enroll, as in no case should relief be granted to those who did not make application in their proper election district for enrollment. In the actual working out of a *modus vivendi* it seems to me that this becomes a detail of the duties devolving upon the board of elections either by application to the board or to the districts by the individuals by affidavit or certificate presented upon the correction day of the voting lists. Any citizen presenting an affidavit or certificate of the refusal of the board of registry to receive his name may have his name enrolled upon the day for the correction of the books or such day as the board of elections should designate for the reception of such names improperly rejected. As to the instant case, I cannot feel that the action of the inspectors of elections and officials was improper, and the application is, therefore, denied, but in view of the confusion arising from the construction of this law it is denied without costs.

Ordered accordingly.